# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| In Re Application of Robert Gordon Kidd for an Order Pursuant to 28 U.S.C. § 1782 to Take Discovery from John Thomas Reynolds and Mark McCall | No. 3:20-cv-00800 (KAD) |
| | September 18, 2020 |

## MEMORANDUM OF DECISION RE: RESPONDENTS' OBJECTIONS TO ORDER DENYING RESPONDENTS' MOTION TO QUASH (ECF NO. 35)

Kari A. Dooley, United States District Judge:

Pending before the Court are the objections of Respondents John Thomas Reynolds ("Reynolds") and Mark McCall ("McCall" and, collectively, the "Respondents") to Magistrate Judge Farrish's May 12, 2020 order (the "Ruling," ECF No. 18) denying Respondents' motion to quash the subpoenas duces tecum served on Respondents by Petitioner Robert Gordon Kidd ("Kidd," or the "Petitioner"). The subpoenas, served pursuant to 28 U.S.C. § 1782, ordered Respondents to produce documents and appear for depositions, which Petitioner seeks to use in connection with an action currently pending before the Scotland Court of Session (the "Scottish proceeding"). The Scottish proceeding arises out of Kidd's sale of his minority interest in an industrial services company to a private equity fund called Lime Rock V Partners, LP ("Lime Rock V"), referred to herein as the "Transaction." Kidd alleges that the Transaction was tainted by a conflict of interest affecting Kidd's counsel, Paull & Williamsons LLP ("P&W"), which was also unofficially advising Lime Rock V in connection with the sale. (*See* Pet'r's Mem. in Support of *Ex Parte* App. ¶¶ 2–4, ECF No. 1-1, hereafter "App.".) The Court assumes the parties' familiarity

with the underlying facts and procedural history of the case, as set forth in its previous memorandum of decision granting the Respondents' motion to stay compliance with the subpoenas pending the Court's ruling on Respondents' objections (ECF No. 44) and as articulated in Judge Farrish's decision. The Court has considered Respondents' objections ("Resp's' Br.," ECF No. 35) and supporting materials, Petitioner's response to the objections ("Pet'r's Br.," ECF No. 51) and supporting materials, and Respondents' reply brief ("Resp's' Reply," ECF No. 52) and has reviewed the briefs and materials that were before Judge Farrish in denying the motion to quash. Oral argument was held on August 19, 2020. (ECF No. 55.) For the reasons that follow, Respondents' objections are OVERRULED in part and SUSTAINED in part.

**Standard of Review**

Preliminarily, the parties disagree as to the correct standard for reviewing Judge Farrish's decision. "Under Federal Rule of Civil Procedure 72, a district judge reviews a 'pretrial matter not dispositive of a party's claim or defense' under the 'clearly erroneous or . . . contrary to law' standard." *Royal Park Investments SA/NV v. U.S. Bank Nat'l Ass'n*, 285 F. Supp. 3d 648, 652 (S.D.N.Y. 2018) (quoting Fed. R. Civ. P. 72(a)); *see also* 28 U.S.C. § 636(b)(1)(A). "A ruling is 'clearly erroneous' if the reviewing court is 'left with the definite and firm conviction that a mistake has been committed.'" *Ungar v. City of New York*, 329 F.R.D. 8, 11 (E.D.N.Y. 2018) (quoting *Easley v. Cromartie*, 532 U.S. 234, 242 (2001)). "Similarly, under the 'contrary to law' standard of review, a district court may reverse a finding only if it finds that the magistrate failed to apply or misapplied relevant statutes, case law or rules of procedure." *Garcia v. Benjamin Grp. Enter. Inc.*, 800 F. Supp. 2d 399, 403 (E.D.N.Y. 2011) (quotation marks, alterations, and citation omitted). "Pursuant to this highly deferential standard of review, magistrates are afforded broad discretion in resolving discovery disputes and reversal is appropriate only if their discretion is

abused." *Ungar*, 329 F.R.D. at 11 (citations omitted); *see also Khaldei v. Kaspiev*, 961 F. Supp. 2d 572, 575 (S.D.N.Y. 2013) ("This is a highly deferential standard, and the objector thus carries a heavy burden").

"However, a pretrial matter that is 'dispositive of a claim or defense' is reviewed de novo." *Royal Park Investments*, 285 F. Supp. 3d at 652 (quoting Fed. R. Civ. P. 72(b)). "A ruling is 'dispositive' if it resolves substantive claims for relief rather than mere issues in the litigation." *In re Hulley Enterprises Ltd.*, 400 F. Supp. 3d 62, 71 (S.D.N.Y. 2019) (quotation marks and citation omitted). "Discovery orders generally are non-dispositive." *On-Line Techs., Inc. v. Perkin-Elmer Corp.*, 428 F. Supp. 2d 76, 80 (D. Conn. 2006). While the Second Circuit has not addressed whether a Magistrate Judge's ruling on a Section 1782 application is dispositive within the meaning of Rule 72, "[m]ost lower courts[] . . . have found that such rulings are *not* dispositive and are therefore subject to review only for clear error."[1] *In re Hulley*, 400 F. Supp. 3d at 71 (citing cases). This is because the grant of a Section 1782 petition "is ancillary by nature, and a ruling on such a motion is procedural and fails to address any substantive issues"; nor does it "dispose of the underlying claims or defenses pending in the foreign or international tribunal." *Id.* (quotation marks and citation omitted); *see also In re Vale S.A.*, No. 20-MC-199 (JGK) (OTW), 2020 WL 4048669, at *3 n.3 (S.D.N.Y. July 20, 2020) ("A motion seeking discovery under § 1782 is a non-dispositive motion under Federal Rule of Civil Procedure 72(b)"); *In re Iraq Telecom Ltd.*, No. 18-MISC-458 (LGS) (OTW), 2020 WL 1047036, at *1 (S.D.N.Y. Mar. 4, 2020) ("A deferential standard of review applies because the matter is nondispositive"); *In re Application of Shervin Pishevar for an Order to take Discovery for use in Foreign Proceedings Pursuant to*

---

[1] The Second Circuit has, however, recognized that a Magistrate Judge's decision as to whether to grant reciprocal discovery in connection with a Section 1782 application is nondispositive and as such, is subject to clear error review by the district court. *See Sampedro v. Silver Point Capital, L.P.*, 958 F.3d 140, 142 n.1 (2d Cir. 2020).

*28 U.S.C. § 1782*, No. 119-MC-00503 (JGK) (SDA), 2020 WL 769445, at *6 (S.D.N.Y. Feb. 18,

2020), *adhered to on reconsideration sub nom. In re Pishevar*, 2020 WL 1862586 (S.D.N.Y. Apr.

14, 2020) ("Since the Court's decision on a Section 1782 application is non-dispositive, it may be

decided by a magistrate judge by opinion and order, rather than a report and recommendation to

the district court").  As indicated at oral argument, the Court finds this line of cases persuasive and

accordingly reviews Judge Farrish's ruling under the clearly erroneous standard.[2]

**Discussion**

> Section 1782 provides in relevant part:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made . . . upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court. . . . To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

28 U.S.C. § 1782(a).  To obtain discovery pursuant to the statute, three requirements must therefore

be met: "(1) the person from whom discovery is sought resides (or is found) in the district of the

district court to which the application is made, (2) the discovery is for use in a foreign proceeding

before a foreign or international tribunal, and (3) the application is made by a foreign or

---

[2] In urging the Court to apply *de novo* review, Respondents point out that an order granting discovery pursuant to Section 1782 constitutes a final adjudication of a petition and is accordingly an appealable order. *See, e.g.*, *Chevron Corp. v. Berlinger*, 629 F.3d 297, 306 (2d Cir. 2011).  They thus argue that it would be "incoherent" to treat a Section 1782 petition as non-dispositive for purposes of Fed. R. Civ. P. 72 and 28 U.S.C. § 636(b), yet "dispositive enough to be immediately reviewable under the collateral order doctrine."  (Resp's.' Br. at 13 (quoting *Kiobel v. Millson*, 592 F.3d 78, 107 (2d Cir. 2010) (Jacobs, *J*., concurring)).)  However, "whether an order is 'final' or 'immediately appealable' under 28 U.S.C. § 1291 is not the same as whether an order is dispositive for purposes of a magistrate judge's authority under 28 U.S.C. § 636 or Federal Rule of Civil Procedure 72."  *In re Hulley*, 400 F. Supp. 3d at 72.  A ruling on a Section 1782 petition is by its nature procedural and does not "address any substantive issues" in the litigation.  *See id*. at 71 (quotation marks and citation omitted).  Nor is the Court persuaded to apply a different rule by virtue of decisions that have found rulings on enforcement of administrative subpoenas to constitute dispositive decisions—a position that appears to likewise elevate form over substance by emphasizing the finality of such orders. *Cf. Equal Emp't Opportunity Comm'n v. City of Long Branch*, 866 F.3d 93, 100 (3d Cir. 2017) ("[B]ecause a proceeding to enforce an administrative subpoena is over regardless of which way the court rules, a motion to enforce an administrative subpoena is a dispositive motion.") (quotation marks and citation omitted).

international tribunal or any interested person." *Sampedro*, 958 F.3d at 143 (quoting *Mees v. Buiter*, 793 F.3d 291, 297 (2d Cir. 2015)).

Respondents do not object to Judge Farrish's conclusion that Petitioner has satisfied these statutory requirements.  Instead, they dispute his determinations with respect to each of the discretionary "*Intel*" factors, which ask:

> (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding," in which event "the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad";
>
> (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance";
>
> (3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and
>
> (4) whether the request is "unduly intrusive or burdensome."

*Kiobel by Samkalden v. Cravath, Swaine & Moore LLP*, 895 F.3d 238, 244 (2d Cir. 2018), *cert. denied sub nom. Kiobel ex rel. Samkalden v. Cravath, Swaine & Moore LLP*, 139 S. Ct. 852 (2019) (quoting *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264–65 (2004)).

The Second Circuit has cautioned that "'[t]he *Intel* factors are not to be applied mechanically,' and 'a district court should also take into account any other pertinent issues arising from the facts of the particular dispute.'"  *In re del Valle Ruiz*, 939 F.3d 520, 533 (2d Cir. 2019) (quoting *Kiobel*, 895 F.3d at 245) (brackets omitted).  These factors are "to be considered in light of the 'twin aims' of Section 1782: 'providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts.'"  *Kiobel*, 895 F.3d at 244 (quoting *In re Application for an Order Permitting Metallgesellschaft AG to take Discovery*, 121 F.3d 77, 79 (2d

Cir. 1997)).  The Court addresses Judge Farrish's ruling with respect to each of the *Intel* factors in turn.

### Whether Respondents Are Participants in the Scottish Proceeding

As noted above the first *Intel* factor asks whether "the person from whom discovery is sought is a participant in the foreign proceeding," as "the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad."  542 U.S. at 264.  This is because "[a] foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence."  *Id.*  However, the Second Circuit has recognized that "when the real party from whom documents are sought . . . is involved in foreign proceedings, the first *Intel* factor counsels against granting a Section 1782 petition seeking documents from U.S. counsel for the foreign company."  *Kiobel*, 895 F.3d at 245; *see also Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 85 (2d Cir. 2004) ("Although technically the respondent in the district court was Cravath, for all intents and purposes petitioners are seeking discovery from DT, their opponent in the German litigation. . . . because DT is a participant in the German litigation subject to German court jurisdiction, petitioner's need for § 1782 help 'is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad.'") (quoting *Intel*, 542 U.S. at 264); *In re Mare Shipping Inc.*, No. 13-MC-238, 2013 WL 5761104, at *4–*5 (S.D.N.Y. Oct. 23, 2013), *aff'd sub nom. Mare Shipping Inc. v. Squire Sanders (US) LLP*, 574 F. App'x 6 (2d Cir. 2014) (applying same principle).

Here, Respondents are not named as defendants in the Scottish proceeding (referred to as "defenders" therein).  Reynolds and McCall are managing directors and limited partners of a defender entity called Lime Rock Management LP ("LRM LP") and other entities related to defender Lime Rock V, which are referred to collectively as "Lime Rock," and both work out of

Lime Rock's Westport, Connecticut offices.  (App. ¶¶ 10, 47; *see also* Reynolds Decl. ¶¶ 2–3, ECF No. 9-4; McCall Decl. ¶¶ 2–3, ECF No. 9-5.)  Petitioner seeks discovery from Respondents by virtue of their role as "officers, directors, or indirect controlling parties" for the defender entities that control Lime Rock V and advised it in connection with the Transaction.[3]  (App. ¶ 49.)  Respondents have otherwise "not appeared before the Scottish court and have not consented to the Scottish court's jurisdiction."  (Apr. 10, 2020 Kerr Decl. ¶ 14, ECF No. 11-18.)

In his ruling with respect to the first *Intel* factor, Judge Farrish observed that the fact that Respondents are not parties to the Scottish proceeding generally supports the need for Section 1782 discovery, as affirmed by the Second Circuit case law applying *Intel*.  (*See* Ruling at 8–9.)  He simultaneously recognized the validity of Respondents' argument "that the first *Intel* factor can weigh against petitioners who nominally seek discovery from non-participants but who, 'for all intents and purposes,' are actually seeking discovery from participants."  (Ruling at 9–10 (citing *Schmitz*, 376 F.3d at 81–82, 85, and *Kiobel*, 895 F.3d at 245).)  Judge Farrish nonetheless held that "[t]o defeat Kidd's application on the ground that the evidence he seeks is coextensive with what he can get from the Lime Rock entities in Scotland . . . the respondents would have to show that he can get this evidence through Scottish processes.  They have not done so."  (Ruling at 10.)  In so ruling Judge Farrish cited *In re Microsoft Corp.*, 428 F. Supp. 2d 188, 194 (S.D.N.Y. 2006), *abrogated on other grounds by In re del Valle Ruiz*, 939 F.3d 520, a case in which the District

---

[3] More specifically, "Defender LRM LP is a Delaware-registered limited partnership that serves as investment manager and provider of advisory services to Lime Rock V."  (App. ¶ 13.)  "Defender Lime Rock Management LLP ('LRM LLP') . . . additionally advised Lime Rock V in connection with the Transaction and negotiated on behalf of Lime Rock."  (*Id.* ¶ 14.)  In addition to serving as a co-founder, managing director, and limited partner of defender LRM LP, Petitioner alleges that McCall also maintains indirect control of defender LRM LLP through two entities named LRM UK One Limited and LRM UK Two Limited, thus heightening the need for discovery from him.  (*Id.* ¶¶ 47–48.)  Petitioner further seeks discovery from Respondents in connection with their role with two other entities, Lime Rock Partners GP V, LP ("LRP GP V LP") and LRP GP V, Inc., which, while not named as defenders in the Scottish proceeding, are alleged to control Lime Rock V by virtue of the fact that Lime Rock V can only act through LRP GP V LP as its general partner, while LRP GP V LP can in turn only act through its general partner, LRP GP V, Inc.  (*Id.* ¶ 43; Hume Decl. ¶¶ 4–5, ECF No. 1-3.)

Court held that while the respondents from whom Microsoft sought discovery were "not 'participants,' *per se*, in the underlying antitrust proceeding" before the European Commission, the first *Intel* factor nonetheless favored respondents because "all of the documents sought by Microsoft are within the Commission's reach." The District Court therefore deemed Section 1782 discovery improper, observing that "[t]he relevant inquiry is whether the evidence is available to the foreign tribunal." *Id*.

Relying on the *Schmitz* and *Kiobel* cases, Respondents assert that it was clearly erroneous for Judge Farrish to find that the first *Intel* factor weighed in favor of discovery because "for all intents and purposes" Petitioner seeks evidence from the Scottish defenders. (Resp's' Br. at 20 (quoting *Schmitz*, 376 F.3d at 85).) Petitioner responds that the cases Respondents cite are inapposite because they involved efforts by foreign litigants to obtain discovery from law firms in the United States; they thus embody a policy of ensuring that documents that are otherwise undiscoverable from participants in a foreign proceeding not be rendered discoverable simply because they come into the possession of the participants' U.S. counsel. (*See* Pet'r's Br. at 15–17.) Petitioner further argues that this policy has no application here, where Reynolds and McCall maintain their own legal identities and interests pertinent to the foreign litigation and where their relationship to the sought-after documents and testimony is more than merely custodial. Lastly, Petitioner represents that some of the information Kidd seeks from Respondents stems from their involvement with certain Lime Rock entities that are *not* defenders in the Scottish proceeding, such as LRP GP V and LRP GP V, Inc., both of which are alleged to have effectively acted as Lime Rock V's decisionmakers in connection with the Transaction. (*See id*. at 13; *see also* Pet'r's Opp. to Mot. to Quash at 20–21, ECF No. 11.) Petitioner thus argues that Judge Farrish did not

err in declining to extend the principle articulated in *Schmitz* and its progeny to the circumstances presented here.

In urging this Court to apply the principle espoused in *Schmitz* to not only attorneys, but also officers, employees, and directors of participants in foreign litigation, Respondents cite cases from outside of the Second Circuit. *See In re Schlich*, No. CV 16-91278-FDS, 2016 WL 7209565, at *4–*5 (D. Mass. Dec. 9, 2016), *aff'd*, 893 F.3d 40 (1st Cir. 2018) (concluding that first *Intel* factor weighed against granting discovery where the respondent company was a named party to the foreign proceeding and the information sought from the respondent employees of that company was within the jurisdiction of the foreign tribunal, even though the employees were not themselves participants in the foreign proceeding); *In re Peruvian Sporting Goods S.A.C.*, No. CV 18-MC-91220, 2018 WL 7047645, at *6 (D. Mass. Dec. 7, 2018) (same); *In re Application Pursuant to 28 U.S.C. Sec. 1782*, No. 1:14-MC-44, 2014 WL 4181618, at *4 (S.D. Ohio Aug. 21, 2014) (concluding that respondents "will necessarily be 'participants' in the Polish Proceeding" within the meaning of the first *Intel* factor by virtue of their role as shareholders and managing board members of the entities that were named as defendants in Poland).

The Court is aware of no Second Circuit precedent extending this principle to the type of circumstances presented here, however, and can therefore glean no clear error in Judge Farrish's failure to do so. *See, e.g.*, *Garcia*, 800 F. Supp. 2d at 403 ("[U]nder the 'contrary to law' standard of review, a district court may reverse a finding only if it finds that the magistrate failed to apply or misapplied relevant statutes, case law or rules of procedure.") (quotation marks, citation, and alterations omitted). Further, the cases involving subpoenas directed to U.S.-based law firms with respect to their foreign clients are not so analogous as to be clearly applicable. Reynolds and McCall are alleged to have played a direct role in the Transaction underlying the Scottish

proceedings, and their connection to the defenders in the Scottish proceedings is therefore not akin to an attorney-client relationship.

Even if the Court were to view Petitioner's requests through the lens of *Schmitz* and *Kiobel*, moreover, the record before Judge Farrish did not support Respondents' conclusory assertion that the "real parties in interest" with respect to this discovery were the Scottish defenders. While Respondents emphasize certain of Kidd's document requests that are tailored to obtaining information concerning Lime Rock V, LRM LP, and LRM LLP, which are all defenders in the Scottish proceeding (*see* Doc. Requests Nos. 5–8, Pet'r's Opp. to Mot. to Quash Exs. A, B, ECF Nos. 11-1, 11-2), the document requests also seek information regarding other entities McCall and Reynolds are alleged to control and/or serve, which are not defenders in the foreign action. (*See id.* Doc. Requests Nos. 1, 5–6.) It is therefore not apparent that the scope of the document requests completely or even substantially overlaps with the discovery that would be available through the Lime Rock defenders in Scotland, as Respondents contend.

The Court does note that by imposing on Respondents the burden "to show that [Kidd] can get this evidence through Scottish processes," in order to warrant a finding that the first *Intel* factor militated against granting the requested discovery (Ruling at 10), Judge Farrish may have injected what Respondents describe as an unnecessary "reverse foreign-discoverability test" into this step of the inquiry. (Resp's' Br. at 20.) Judge Farrish's cognizance of the "long and uncertain fight ahead of [Kidd] in Scotland" due to the apparent limitations on discovery imposed by Scottish procedure (Ruling at 10–11) seems to have invited an analysis distinct from the question of jurisdiction—*i.e.*, whether the evidence sought "is available to the foreign tribunal." *Microsoft*, 428 F. Supp. 2d at 194. However, as discussed above, the Court does not find that Judge Farrish's ultimate conclusion—that Respondents are not participants in the Scottish proceeding for purposes

of the first *Intel* factor—is clearly erroneous and so any error in articulating the appropriate standard was harmless.[4]

### The Nature of the Scottish Tribunal, Character of the Scottish Proceedings, and Receptivity of the Scottish Courts to U.S. Federal Court Judicial Assistance

With regard to the second *Intel* factor, the Second Circuit has stated that "a district court's inquiry into the discoverability of requested materials should consider only *authoritative proof* that a foreign tribunal would reject evidence obtained with the aid of section 1782," such as "a forum country's judicial, executive or legislative declarations that specifically address the use of evidence gathered under foreign procedures." *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1100 (2d Cir. 1995) (emphasis added). Accordingly, the Second Circuit does "not believe that an extensive examination of foreign law regarding the existence and extent of discovery in the forum country is desirable in order to ascertain the attitudes of foreign nations to outside discovery assistance," and district courts are encouraged to avoid engaging in "a battle-by-affidavit of international legal experts" likely to yield only a "superficial" interpretation of foreign law. *Id.* at 1099.

Citing these principles, Judge Farrish found an absence of "authoritative proof" that the Scottish court would deem the evidence Petitioner seeks irrelevant or that it would decline to receive it. (Ruling at 12–13.) Specifically, given the potential that Reynolds and McCall would have knowledge of P&W's alleged conflict of interest due to their role as Lime Rock V principals

---

[4] The Court recognizes that some "Courts in this district have held that when a subsidiary is party to a foreign proceeding and the parent is the discovery target, the first *Intel* factor weighs against granting the discovery application because the evidence sought is within the foreign tribunal's jurisdictional reach." *In re Postalis*, No. 18-MC-497 (JGK), 2018 WL 6725406, at *5 (S.D.N.Y. Dec. 20, 2018). Yet another court more recently concluded that "[p]arent companies who are 'participants' to foreign proceedings are considered separate legal entities from their subsidiaries and affiliates for the purpose of Section 1782 motions," and thus held that the fact that a respondent-subsidiary likely possessed the same information as its parent company, which was the actual participant in the foreign litigation, did not militate against finding the first *Intel* factor satisfied. *In re Top Matrix Holdings Ltd.*, No. 18 MISC. 465 (ER), 2020 WL 248716, at *5 (S.D.N.Y. Jan. 16, 2020) (citing *In re del Valle Ruiz*, 939 F.3d at 523). Given the fact-specific nature of this inquiry, the multiple Lime Rock entities implicated in Petitioner's discovery requests, and the varying pronouncements on this issue in the case law, the Court cannot divine a categorical rule that Judge Farrish neglected to apply in ruling on the first *Intel* factor.

and senior officials of its Cayman Islands parent company, Judge Farrish rejected the notion that the evidence sought was irrelevant—to the contrary, he found "[t]his information would seem to go to the very heart of the Scottish case." (*Id.* at 13.) Judge Farrish also noted that while Respondents had "filed a 'Petition to Interdict this harassing discovery in the Scottish court,' . . . the Scottish court decided not to rule on the petition, instead electing to wait until the respondents' Motion to Quash in this Court was resolved." (*Id.*)

After Judge Farrish issued his ruling, the Scottish court rendered a decision on the Petition to Interdict and to Interdict *Ad Interim* (essentially a motion for a preliminary and permanent injunction, *see* Resp's' Br. at 8; Petition, ECF No. 12-4) prohibiting Kidd from taking Reynold's and McCall's depositions in the United States at this stage of the litigation but holding that the document requests were not oppressive and thereby denying Respondents' request to enjoin the document discovery. (*See* Decision Note on Petition to Interdict, June 2, 2020 Kerr Decl. Ex. A, ECF No. 34-1; May 28, 2020 Garioch Decl. Ex. A, ECF No. 35-1.) The parties dispute the significance of the Scottish tribunal's ruling on the Petition to Interdict as it bears on the second *Intel* factor.

"While the Court is generally not precluded from considering additional evidence not submitted by a party to a magistrate judge when reviewing a report and recommendation issued by such a judge on a dispositive motion pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, there is nothing in Rule 72(a) of the Federal Rules of Civil Procedure which states that it may do so on a non-dispositive issue, such as that decided here." *Rivera v. Hudson Valley Hosp. Grp., Inc.*, No. 17-CV-5636 (KMK), 2019 WL 3955539, at *9 (S.D.N.Y. Aug. 22, 2019) (quotation marks, citations, and brackets omitted). "Courts in the Second Circuit have interpreted this silence, in light of the express authorization to consider additional evidence under Rule 72(b),

as indicating that a judge cannot entertain new evidence on a non-dispositive Rule 72(a)motion."

*Id*. (citing cases); *but see Hartford Roman Catholic Diocesan Corp. v. Interstate Fire & Cas. Co*.,

No. 3:12-CV-1641 (JBA), 2015 WL 164069, at *7 (D. Conn. Jan. 13, 2015) (noting that "a district

judge should have at least the authority to consider further evidence in reviewing rulings on

nondispositive matters," but "given that the district court functionally operates as an appellate

tribunal under Rule 72(a), such discretion should rarely be exercised") (quotation marks and

citation omitted).

In light of Rule 72(a)'s proscriptions, this Court is reluctant to measure Judge Farrish's

ruling against evidence that was not before him.  Even if the Court were to consider the Scottish

decision, however, it would not warrant a finding that Judge Farrish's ruling on this question was

clearly erroneous.  Indeed, with respect to the document requests, the Scottish court found that

"[w]hile I accept that the terms of the document requests are broad, I am not satisfied that the

documents which are the subject of the US order could not have been recovered in the commercial

action," *i.e*., the Scottish proceeding, and further observed that "[e]ven if the allowed recovery is

wider than is likely to have been granted here, that does not in my view make it oppressive," while

reserving decision on an ultimate legal conclusion for a later stage of the litigation.  (Decision Note

¶ 6.)  The Scottish court's failure to enjoin Kidd's attempted document production without

prejudice to revisiting the issue hardly constitutes authoritative proof that the Scottish tribunal

would reject the evidence sought.

As to the depositions, the Scottish court did hold that it would be oppressive and therefore

"unconscionable" within the meaning of Scottish procedure[5] to require Reynolds and McCall to

submit to depositions in the United States at this stage, but issued only an interim order barring

---

[5] Unconscionable was defined by the Scottish court as "including conduct which is oppressive or vexatious or which interferes with the due process of the domestic court."  (Decision Note ¶ 4.)

this form of discovery, noting that "the issue can be reviewed if and when the case is appointed for proof." (*Id*. ¶ 8.) At oral argument, Petitioner characterized this ruling as tantamount to the issuance of a preliminary injunction. Petitioner also acknowledged that he does not intend to violate the orders of the Scottish court and thus will only proceed with the depositions of Reynolds and McCall in the event that the Scottish order is lifted. The decision regarding the depositions, even if considered, does not alter the analysis with respect to the second *Intel* factor. Because the Scottish court deferred to a later stage of the litigation the ultimate determination on the taking of the depositions, the ruling does not provide "authoritative proof" that the depositions will be categorically precluded. Judge Farrish's decision in this regard was therefore not clearly erroneous.

### Whether the Request Conceals an Effort to Circumvent Proof-Gathering Restrictions in Scotland

"The third factor asks 'whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States.'" *In re Hulley Enterprises*, 358 F. Supp. 3d 331, 347 (S.D.N.Y. 2019), *aff'd sub nom. In re Hulley Enterprises Ltd.*, 400 F. Supp. 3d 62 (S.D.N.Y. 2019) (quoting *Kiobel*, 895 F.3d at 244). "'Proof-gathering restrictions' are best understood as rules akin to privileges that *prohibit* the acquisition or use of certain materials, rather than as rules that *fail to facilitate* investigation of claims by empowering parties to require their adversarial and non-party witnesses to provide information." *Mees*, 793 F.3d at 303 n.20 (brackets omitted). The Second Circuit has "held that a district court may not refuse a request for discovery pursuant to § 1782 because a foreign tribunal has not yet had the opportunity to consider the discovery request." *Metallgesellschaft*, 121 F.3d at 79. "Like the other *Intel* factors, this factor should not cause district courts to delve deeply into an analysis

of the discovery procedures of foreign countries." *In re Sampedro*, No. 3:18-MC-47 (JBA), 2018 WL 5630586, at \*4 (D. Conn. Oct. 30, 2018).

In his decision, Judge Farrish acknowledged Respondents' position that under the terms of the "Initial Procedure" set by the Scottish court, in advance of a debate scheduled for June 23, 2020, discovery was limited to issues concerning Kidd's settlement agreement and the prior lawsuit with P&W. (Ruling at 15–16.)  At the debate the Scottish defenders would argue for dismissal of the Scottish proceeding.  In light of this limitation on discovery, Respondents claimed that Kidd was using this Section 1782 application to circumvent the limitations set by the Scottish tribunal.  Respondents renew this argument in their objection to Judge Farrish's ruling.  Petitioner, on the other hand, has maintained throughout these proceedings that the Initial Procedure does not preclude Petitioner from taking discovery in the way that Respondents contend, as "[t]here is categorically no agreement between the parties or between the parties and the Scottish court that Mr. Kidd's right to seek discovery is restricted in any way."  (Apr. 10, 2020 Kerr Decl. ¶ 16.)  On this issue Judge Farrish was "not persuaded that Kidd [was] attempting to escape the consequences of a deal made in Scotland."  (Ruling at 16.)  First, Judge Farrish noted that Kidd filed his Section 1782 application a week before the Preliminary Hearing establishing the Initial Procedure was even set.  Second, Judge Farrish declined to interpret the Initial Procedure, under which certain discovery was to be phased or delayed, as a "proof-gathering restriction" within the meaning of the third *Intel* factor—noting that "[t]o say otherwise is to argue that Kidd must complete discovery in Scotland before he can begin it in the U.S.," which would fly in the face of the Second Circuit's rejection of a statutory "quasi-exhaustion" requirement.  (*Id*. (citing *Metallgesellschaft*, 121 F.3d at 79).)  Third, and relatedly, Judge Farrish was not inclined to require Kidd to seek discovery through Letters of Request via the Hague Convention of the Taking of Evidence Abroad as

Respondents urged, citing again the Second Circuit's disavowal of a foreign exhaustion prerequisite for obtaining Section 1782 discovery. (*Id*. at 16–17.)

Judge Farrish's determinations on this issue were not clearly erroneous. As the Second Circuit has noted, "there is a difference between a § 1782(a) request that seeks documents that cannot be obtained in a foreign proceeding because the foreign jurisdiction does not provide a *mechanism* for such discovery, and one that seeks documents that cannot be obtained because the foreign jurisdiction *prohibits* the discovery of those documents." *In re Accent Delight Int'l Ltd.*, 791 F. App'x 247, 251 (2d Cir. 2019) (summary order). Here, there is no evidence that the Initial Procedure set by the Scottish court is tantamount to an outright discovery ban; nor does it invoke "rules akin to privileges that *prohibit* the acquisition or use of certain materials." *Mees*, 793 F.3d at 303 n.20. As to whether this application is premature in light of the Scottish tribunal's orders, Judge Farrish correctly noted that Petitioner is not obligated to first exhaust his discovery efforts abroad. *See Application of Malev Hungarian Airlines*, 964 F.2d 97, 100 (2d Cir. 1992) (declining to read a "quasi-exhaustion" requirement into the statute and observing that "requiring an interested person first to seek discovery from the foreign or international tribunal is at odds with the twin purposes of 28 U.S.C. § 1782 as articulated in the legislative history").[6]

---

[6] In advancing their argument regarding the impact of the "Initial Procedure" set by the Scottish tribunal on the third *Intel* factor, Respondents correctly observe that "district judges may well find that in appropriate cases a determination of discoverability under the laws of the foreign jurisdiction is a useful tool in their exercise of discretion under section 1782." *Mees*, 793 F.3d at 303 (quotation marks and citation omitted). (Resp's' Br. at 27.) However, the *Mees* quote is incomplete. The sentence read in its entirety provides: "While we have instructed that 'district judges may well find that in appropriate cases a determination of discoverability under the laws of the foreign jurisdiction is a useful tool in their exercise of discretion under section 1782,' that observation does not 'authorize denial of discovery pursuant to § 1782 solely because such discovery is unavailable in the foreign court, but simply allows consideration of foreign discoverability (along with many other factors) when it might otherwise be relevant to the § 1782 application.'" *Mees*, 793 F.3d at 303 (internal citation, brackets, and ellipsis omitted). The Second Circuit further noted that it wished "to emphasize that the availability of the discovery in the foreign proceeding should *not* be afforded undue weight." *Id.* (emphasis added); *see also Metallgesellschaft*, 121 F.3d at 79–80 (concluding that district court abused its discretion in treating foreign discoverability as "the beginning and end of the inquiry," as "foreign discoverability cannot be used, consistent with the language and purpose of § 1782, as such a blunt instrument"); *accord Intel*, 542 U.S. at 261 ("While comity and parity concerns may be important as touchstones for a district court's exercise of discretion in particular cases, they do not permit our insertion of a generally applicable

Respondents also rely on *Kiobel,* in which the Second Circuit held that the third *Intel* factor weighed against the grant of discovery based upon a finding that the petitioner was "trying to circumvent the Netherlands' more restrictive discovery practices." 895 F.3d at 245. However that finding derived from a concession by the petitioner's counsel that "'it is hardly possible for a party to obtain evidence from another party pre-trial' in the Netherlands." *Id*. at 245 n.3. Respondents here, by contrast, acknowledge that "the Scottish court has indicated it is generally capable of ordering the document discovery that Petitioner seeks here."[7] (Resp's Br. at 27.) Moreover, the Second Circuit's holding in *Kiobel* was based not only on the lack of discovery in the Netherlands but also on the fact that the documents sought were not discoverable under a confidentiality order that expressly barred the petitioner from using the documents outside of the context of the earlier lawsuit in which the protective order was executed. *See Kiobel*, 895 F.3d at 246–47. Accordingly, *Kiobel* does not mandate a different outcome, and indeed *Kiobel* demonstrates the fact-intensive nature of the inquiry. *Id*. at 245 ("[t]he *Intel* factors are not to be applied mechanically."). The Court can identify no misapprehension of the law or the facts in Judge Farrish's application of the third *Intel* factor and therefore will not disturb his exercise of discretion in concluding that it favored the Petitioner.

### Whether the Discovery Requests Are "Unduly Intrusive or Burdensome"

"[A] district court evaluating a § 1782 discovery request should assess whether the discovery sought is overbroad or unduly burdensome by applying the familiar standards of Rule 26 of the Federal Rules of Civil Procedure." *Mees*, 793 F.3d at 302. "Rule 45 of the Federal Rules

---

foreign-discoverability rule into the text of § 1782(a)."). Thus, the foreign discoverability of the evidence is hardly a controlling consideration but, rather, one factor that Judge Farrish was entitled to weigh in his discretion.

[7] Citing Kidd's prior representation that Scottish procedure did not prevent him from seeking discovery prior to the debate, Respondents argue that Kidd is no longer entitled to discovery now that the debate has concluded. (*See* Resp's' Reply at 8). But Judge Farrish's ruling was not contingent on the status of the debate and as discussed *supra*, this Court declines to consider new evidence that was not before Judge Farrish.

of Civil Procedure governs depositions of non-parties by subpoena" and also applies in this context. *See  Pishevar*, 439 F. Supp. 3d at 301.  Because "'it is far preferable for a district court to reconcile whatever misgivings it may have about the impact of its participation in the foreign litigation by issuing a closely tailored discovery order rather than by simply denying relief outright,' . . . to the extent a district court finds that a discovery request is overbroad, before denying the application it should ordinarily consider whether that defect could be cured through a limited grant of discovery." *Mees*, 793 F.3d at 302 (quoting *Euromepa*, 51 F.3d at 1101.) Respondents, as the moving party, bore the burden of proving that the subpoenas should be quashed due to undue burden. *See, e.g.*, *Travelers Indem. Co. v. Metro. Life Ins. Co.*, 228 F.R.D. 111, 113 (D. Conn. 2005).  Applying these standards, Judge Farrish rejected each of Respondents' four arguments regarding the undue burden or intrusion asserted by Respondents, which the Court addresses in turn.

### *"Apex Discovery"*

First, Judge Farrish was not persuaded that Respondents' positions as high-level corporate executives rendered the subpoenas unduly burdensome under the so-called apex doctrine.  As Judge Farrish correctly noted, "[c]ourts have granted protective orders for high-level executives where a party seeking to take a deposition had not yet attempted to obtain information from lower level executives, where high-level executives plainly had no knowledge of the facts, or where the deposition was solely sought to harass the executive." *Gen. Star Indem. Co. v. Platinum Indem. Ltd.*, 210 F.R.D. 80, 82–83 (S.D.N.Y. 2002) (internal citations omitted).  (Ruling at 19.)  "In deciding whether to permit the deposition of a corporate executive, a court must examine the possibility of harassment and the potential disruption of business." *Id*. at 83.  Noting that the quintessential case of improper apex discovery involves an effort to depose a CEO regarding

ordinary business operations that the CEO knows little about, Judge Farrish found that Petitioner's allegations suggested that Reynolds and McCall would be *more* and not less likely to have knowledge of the Transaction, given its size and scope. (Ruling at 21–22.) Judge Farrish also rejected the Respondents' argument that Petitioner should be precluded from taking Respondents' depositions until he first deposed Hamish Hector Lawrence Ross ("Ross") and Jason Smith ("Smith"), who are the two Lime Rock executives who are named as individual defenders in the Scottish proceeding (*see* App. ¶¶ 15–16), as Respondents failed to show that Ross's and Smith's knowledge of the Transaction was coextensive with that of Respondents. (Ruling at 23.)

Respondents argue in conclusory form that Judge Farrish committed clear error by failing to consider whether the evidence that Petitioner sought could be obtained from lower-level employees. Because it is Respondents' responsibility to prove undue burden on a motion to quash, *see Travelers*, 228 F.R.D. at 113, and because Respondents did not support their contention that other employees might hold relevant information with any evidence, the Court declines to find Judge Farrish's ruling on this issue clearly erroneous.[8]

Respondents further argue that Judge Farrish improperly relied on cases where depositions of corporate executives were sought after "substantial other discovery" had already taken place, whereas here, Petitioner sought to depose Reynolds and McCall without any discovery to support his asserted need for their testimony. (Resp's' Br. at 36.) As a general matter, the extent of the discovery undertaken may be relevant to assessing whether the deposition of corporate executives should be permitted. However, the case law does not establish that initial discovery is a prerequisite to substantiate the propriety of a deposition of a corporate executive. In *Miller v. Nat'l*

---

[8] At oral argument before Judge Farrish, counsel for Respondents represented that McCall and Reynolds "were not involved and did not participate in the negotiations of this [T]ransaction," (*see* Tr. of May 1, 2020 Motion Hearing at 11:14–16, ECF No. 14) but as Judge Farrish noted, the affidavits submitted in support of Respondents' Motion to Quash failed to disavow knowledge of the Transaction.

*Life Ins. Co.*, No. 3:07-CV-364 (PCD), 2008 WL 11377671 (D. Conn. Mar. 13, 2008), for example, which Respondents cite, the district court noted an impending discovery deadline, observed that the plaintiff had placed the corporate executive at issue on his witness list in response to the defendants' interrogatories, but ultimately reviewed the allegations in the plaintiff's complaint to assess the likely relevancy of the corporate executive's testimony to the plaintiff's claims. *See id.* at *1–*2. Judge Farrish did not commit clear error in likewise relying upon Kidd's allegations as set forth in his Section 1782 application to determine that Respondents' alleged role in the Transaction supported the need for their testimony. (*See* Ruling at 22.)

### *Whether Respondents Have Ownership and Control of the Requested Documents*

Judge Farrish next rejected Respondents' assertions that Kidd's document requests were targeted to documents owned or possessed by the Lime Rock entities and not by Respondents individually and that a subpoena directed toward a corporate executive must be limited to documents owned or created by that executive in his or her personal capacity when the discovery at issue concerns a corporate transaction. (Ruling at 23–24.) Judge Farrish correctly held that these arguments failed insofar as Respondents did not claim to lack the "practical ability" to obtain the documents. (*Id.* at 25.) *See Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 138 (2d Cir. 2007) (holding that the phrase "possession, custody, or control" as contained in Fed. R. Civ. P. 34 has been construed to include instances in which "a party has access and the practical ability to possess documents not available to the party seeking them."). Respondents acknowledge that the Court is bound to apply the Second Circuit's "practical ability" test while preserving their right to raise the issue upon further review (Resp's' Br. at 32 n.17) and this Court therefore need not revisit the issue.

### Overbreadth

Federal Rule of Civil Procedure 26 provides in relevant part that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "Even where information is relevant, Rule 26(b)(2)(C)(i)-(iii) authorizes a court to limit otherwise permissible discovery where, among other things, the discovery sought is 'unreasonably cumulative,' the party seeking the discovery has had 'ample opportunity' to obtain the information sought, or 'the burden or expense of the proposed discovery outweighs its likely benefit.'" *John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 298 F.R.D. 184, 186 (S.D.N.Y. 2014). "Additionally, Rule 26(c)(1) provides that, where 'good cause" is demonstrated, the court may forbid discovery 'to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.'" *Id*. Rule 45 likewise permits the Court to quash a subpoena that "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iv).

"Once the requesting party has made a *prima facie* showing of relevance, 'it is up to the responding party to justify curtailing discovery.'" *N. Shore-Long Island Jewish Health Sys., Inc. v. MultiPlan, Inc.*, 325 F.R.D. 36, 48 (E.D.N.Y. 2018) (quoting *Fireman's Fund Ins. Co. v. Great American Ins. Co. of New York*, 284 F.R.D. 132, 135 (S.D.N.Y. 2012)). "[T]he objecting party bears the burden of demonstrating 'specifically how, despite the broad and liberal construction afforded the federal discovery rules, each [request] is not relevant or how each question is overly broad, burdensome or oppressive by submitting affidavits or offering evidence revealing the nature of the burden.'" *Komondy v. Gioco*, No. 3:12-CV-250 (CSH), 2015 WL 917867, at *3 (D. Conn. Mar. 3, 2015) (quoting *Sullivan v. StratMar Sys., Inc.*, 276 F.R.D. 17, 19 (D. Conn. 2011)). "General and conclusory objections as to relevance, overbreadth, or burden are insufficient to

exclude discovery of requested information." *John Wiley & Sons*, 298 F.R.D. at 186 (quotation marks and citation omitted).

Applying these principles, Judge Farrish rejected Respondents' "general and conclusory" assertions that the Petitioner's subpoenas were overbroad and would impose an undue burden absent an affidavit setting forth facts to substantiate their claims. (Ruling at 26–27.) Respondents argue that this was clear error because the subpoenas are facially overbroad and thus undue burden could be established without the need for an affidavit. In granting Respondents' motion to stay compliance with the subpoenas pending a ruling on their objections, this Court agreed that courts can limit discovery based upon a finding of facial overbreadth. (Mem. Re: Order Granting Mot. to Stay at 8–9, ECF No. 44.) *See, e.g.*, *Consolmagno v. Hosp. of St. Raphael Sch. of Nurse Anesthesia*, No. 3:11-CV-00109 (DJS), 2015 WL 13799929, at *4 (D. Conn. Dec. 9, 2015) (granting in part and denying in part motion to quash based upon, *inter alia*, document requests which demonstrated "that the subpoena is overbroad on its face"); *Gropper v. David Ellis Real Estate, L.P.*, No. 13-CV-2068 (ALC) (JCF), 2014 WL 518234, at *4–*5 (S.D.N.Y. Feb. 10, 2014) (agreeing with defendant that "many of the plaintiff's discovery demands are objectionable on their face" despite the defendant's failure to offer more than conclusory boilerplate objections, and issuing protocol for the parties to resolve their dispute).

The Court further agrees that certain of Petitioner's document requests are facially overbroad. For example, Requests Nos. 5, 6, and 7 seek "[a]ll Documents and Communications concerning or evidencing the official or unofficial control structure for each of" a number of different Lime Rock and related entities. (*See* ECF Nos. 11-1, 11-2.) Such requests would sweep in not only all manner of organizational documents but also "investment management or similar advisory or sub-advisory agreements" and "offering memoranda or prospectuses" which could

have nothing to do with the Transaction or P&W's alleged conflict of interest. (*See id.* Request No. 5.) Indeed, some of the requests are of such breadth that they encompass an entirely unknowable universe of documents.

That is not to say however that the application should be denied as a result, as Section 1782 does not present an all-or-nothing proposition. *See Mees*, 793 F.3d at 302 ("'[I]t is far preferable for a district court to reconcile whatever misgivings it may have about the impact of its participation in the foreign litigation by issuing a closely tailored discovery order rather than by simply denying relief outright'") (quoting *Euromepa*, 51 F.3d at 1101). Because overbreadth can be gleaned from the face of the subpoenas, the Court concludes that Respondents' objections should be sustained to the extent that Judge Farrish did not undertake the analysis of whether the subpoenas duces tecum could be narrowed.[9] *See Ahmad Hamad Algosaibi & Bros. Co. v. Standard Chartered Int'l (USA) Ltd.*, 785 F. Supp. 2d 434, 439 (S.D.N.Y. 2011) (granting Section 1782 application but holding that "[w]ith respect to the scope of discovery, the Court directs the parties to first confer in an attempt to agree upon reasonable discovery terms"). But as Judge Farrish observed, the parties are in the best position to ascertain an appropriately narrowed document request. Accordingly, the parties are Ordered to meet and confer in a good faith effort to agree upon a more narrowly tailored discovery order and they shall file a Joint Status Report on or before **October 9, 2020** indicating whether an agreement has been reached. In the absence of an agreement, the Court will refer this matter back to Judge Farrish to resolve any outstanding disputes in this regard.

---

[9] The Court recognizes the difficult situation with which Judge Farrish was presented. As he observed at the motion hearing, "Nobody has really kind of sketched out to me a good middle ground by which we might follow those Second Circuit 1782 cases that talk about cabining discovery to control the burden" and accordingly signaled that he was inclined to issue an "all-or-nothing" ruling, "only because I don't have a clear picture of a middle ground view." (Tr. at 39:16–19, 39:25–40:1–2.) While sympathetic to this dilemma, the Court nonetheless believes that the Court is obligated to facilitate a process for achieving more tailored discovery requests in light of the subpoenas' facial overbreadth.

*Privilege*

Respondents also argued that Petitioner's subpoenas would impose undue burden on Respondents by requiring them to disclose potentially privileged or confidential materials that belong to the Lime Rock entities.  As Judge Farrish noted, Rule 45 permits the court to quash a subpoena if compliance would "require[] disclosure of privileged or other protected matter, if no exception or waiver applies."  Fed. R. Civ. P. 45(d)(3)(A)(iii).  (Ruling at 27.)  Judge Farrish further noted that this District's Local Rules require a party asserting a claim of privilege in response to a discovery request to serve a privilege log on all parties identifying, *inter alia*, the date, author, recipient(s), and subject matter of the allegedly privileged document.  D. Conn. L. Civ. R. 26(e), 45; *see also* Fed. R. Civ. P. 45(e)(2)(A) ("A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must . . . describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim").  Because they did not serve a privilege log, Judge Farrish held that Respondents had failed to carry their burden of establishing that any of the requested documents were privileged.  (Ruling at 27–28.)  In their objection Respondents do not refute this omission and instead assert in conclusory form that "McCall's documents are highly likely to contain a significant amount of privileged information" due to his role as Lime Rock's former general counsel and that documents tailored to communications involving the Transaction, which will include communications with outside counsel, "are particularly likely to require intensive privilege review."  (Resp's' Br. at 33.)

Given the undisputed absence of a proffered privilege log, Judge Farrish did not commit clear error in declining to grant the motion to quash on the basis that the inclusion of privileged materials exacerbated the burden on the Respondents.  *See, e.g.*, *Jansson v. Stamford Health, Inc.*,

312 F. Supp. 3d 289, 299 (D. Conn. 2018), *reconsideration denied*, No. 3:16-CV-260 (CSH), 2018 WL 2357271 (D. Conn. May 24, 2018) ("A party's right to assert and succeed upon of a claim of privilege is conditioned upon its filing 'an adequately detailed privilege log'") (quoting *United States v. Constr. Prod. Research, Inc.*, 73 F.3d 464, 473 (2d Cir. 1996)).  The result however is not that the Respondents may no longer assert privilege. To the contrary, as Judge Farrish recognized, Respondents may still assert claims of privilege by submitting a detailed privilege log at the time of production if, in fact, records are withheld on this basis consistent with the procedures set forth in Local Rules 45 and 26(e).

Finally, Respondents argue that Judge Farrish committed clear error in analyzing the fourth *Intel* factor by failing to consider the effect that the subpoenas would have on Respondents as third parties to the Scottish proceeding.  This argument simply repackages the prior argument that Petitioner should have first pursued other avenues of relief before seeking discovery from Respondents.  (*See* Resp's' Br. at 31–32.)  As this Court has already noted, Section 1782 contains no exhaustion requirement and the Court disagrees that Judge Farrish was obligated to give controlling weight to whether Petitioner first sought the requested information from the defenders in the Scottish proceeding.

**Conclusion**

For the foregoing reasons, Respondents' objections are overruled in part and sustained in part.  The parties shall file a Joint Status Report on or before **October 9, 2020** indicating whether an agreement as to the scope of the subpoenas duces tecum has been reached and if such an agreement has been reached, the scope of that agreement.  In the absence of an agreement the Joint Status Report shall identify the topics or issues on which the parties continue to disagree.  The parties shall further meet and confer on the issue of allocating the costs of production as between

them, and shall include in the Joint Status Report any agreement, or remaining dispute, in this regard.  *See, e.g.*, *Honda Lease Tr. v. Middlesex Mut. Assur. Co.*, No. 3:05-CV-1426 (RNC), 2008 WL 349239, at *5 (D. Conn. Feb. 6, 2008) (ordering that if "Third Party Witness has been subjected to significant expense resulting from inspection and copying of the documents, and he is unable to reach agreement with plaintiff's counsel regarding reasonable reimbursement of such costs, he may move for reimbursement of some or all of those costs").

      **SO ORDERED** at Bridgeport, Connecticut, this 18th day of September 2020.


                            */s/ Kari A. Dooley*
                            KARI A. DOOLEY
                            UNITED STATES DISTRICT JUDGE